**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ROBERT MILES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:25-CV-00164-NCC |
| JEFFERSON COUNTY, MISSOURI, | ) |
| DAVID MARSHAK, MELISSA ELLIS, | ) |
| ERIC BURCH, and CHAD DOWNARD, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on two Motions to Dismiss filed by Defendants in the above case (Docs. 6, 8). Defendants Jefferson County and Sheriff David Marshak (together, "Jefferson County Defendants") move for dismissal of Counts I and III against Jefferson County and all claims against Defendant Marshak (Doc. 6). Defendants Melissa Ellis, Eric Burch, and Chad Downard (together, the "Officer Defendants") move for dismissal of Counts V-X (Doc. 8). Plaintiff Robert Miles ("Plaintiff") asserts ten causes of action: violations of the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983 against the Jefferson County Defendants (Count I); wrongful death under Missouri state law against the Jefferson County Defendants (Count II); failure to hire, train, and/or supervise under 42 U.S.C. § 1983 against the Jefferson County Defendants (Count III), *respondeat superior* against Jefferson County (Count IV), violations of the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983 against each of the Officer Defendants (Counts V, VII, and IX), and wrongful death under Missouri state law against each of the Officer Defendants (Counts VI, VIII, and X). Plaintiff brings claims against the Officer Defendants in both their official and individual capacities. Plaintiff brings claims against Defendant Marshak in his official capacity only. Both motions are fully briefed and

ready for disposition (Docs. 6-9, 22-23, 26-27).  The parties have consented to the jurisdiction of

the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 16).

For the following reasons, the Jefferson County Defendants' motion will be **GRANTED**, and the

Officer Defendants' motion will be **GRANTED in part** and **DENIED in part as moot**.

## I.    Factual Background[1]

On or about September 14, 2023, Plaintiff's daughter, Melissa Miles, was detained by the

Jefferson County Sheriff, processed, booked, and placed in the general population of the

Jefferson County Jail.  At the time of her booking, it was noted that Ms. Miles had a history of

drug use and had most recently used controlled substances on September 13, 2023, and was

therefore at risk for withdrawal symptoms.

On September 17, 2023, after falling off her bunk around 5:00 a.m. and sustaining

injuries, Ms. Miles was taken to Mercy Hospital Jefferson.  She was thereafter deemed fit for

confinement and returned to custody in Jefferson County Jail at around 11:08 a.m.  Defendant

Ellis, a correctional officer, patted down Ms. Miles and brought her to her isolated holdover cell

at around 11:17 a.m.  Ms. Miles' holdover cell was equipped with continuous video monitoring.

Between 11:19 a.m. and 11:38 a.m., Ms. Miles was provided with a mattress, sheets, and a

blanket, and she attempted to sleep on her mattress.  Between 11:41 a.m. and 11:49 a.m., Ms.

Miles received and ate her lunch, filled a cup with water from her sink and drank it, and laid

back down on her mattress.  At 11:52 a.m., Defendant Ellis adjusted Ms. Miles' wrist splint and

removed her lunch from the holdover cell while Ms. Miles remained on her mattress.  At around

11:55 a.m., a correctional officer brought Ms. Miles toilet paper while she remained on her

mattress.

---

[1] The following facts are taken from the complaint (Doc. 1).  For the purposes of these
motions to dismiss, the facts are accepted as true.

Between 12:02 p.m. and 12:04 p.m., Ms. Miles rolled off of her mattress. She displayed signs of labored breathing and minimal movement, and her right arm limply slid off of her chest and onto the floor. She did not move again after that time. At approximately 12:18 p.m., Defendant Downard, a correctional officer, looked through Ms. Miles' cell window without entering the cell. At around 12:32 p.m., Defendant Burch, another correctional officer, also checked Ms. Miles' cell without entering it. At around 2:17 p.m., Defendant Ellis looked through the window of Ms. Miles' cell, noticed that Ms. Miles was not moving or breathing, and alerted EMS personnel. Ms. Miles was pronounced dead at approximately 2:31 p.m. on September 17, 2023. A postmortem exam indicated that Ms. Miles' death was caused by fentanyl, fluorofentanyl, and methamphetamine toxicity.

The complaint alleges that the Jefferson County Sheriff's Department and Defendant Marshak have enacted mandatory policies and procedures—containing explicit instructions—for the care and custody of inmates. These policies require employees to perform cell checks on inmates and prohibit inmates' access to, or ingestion of, controlled substances. According to the complaint, in the hours leading up to Ms. Miles' death, she was provided or allowed access to a lethal dose of controlled substances and ingested the same while under the care, custody, and control of Jefferson County. Specifically, the complaint alleges that all defendants failed to search Ms. Miles or the cell for controlled substances prior to placing her in her holdover cell, and failed to prevent Ms. Miles from harboring or gaining access to controlled substances while in her holdover cell. The complaint further alleges that the Officer Defendants failed to properly and appropriately monitor Ms. Miles.

The complaint also identifies Defendant Marshak as, at all relevant times, the elected Sheriff and the policymaker of the Jefferson County Sheriff's Office responsible for promulgating and enforcing the regulations and policies of the Jefferson County Sheriff's Office.

Further, the complaint asserts that Defendant Marshak was responsible for the training and supervision of other correctional officers pursuant to such policies and regulations.

## II.  The Parties' Arguments

The Officer Defendants argue that they are entitled to qualified immunity as to Plaintiff's § 1983 claims against them because Plaintiff has not pled a constitutional violation, nor one that was clearly established.  They further assert Plaintiff fails to state a claim under § 1983 against any officer because Plaintiff improperly relies on generic allegations without supporting facts. The Officer Defendants also argue that they are entitled to official immunity as to Plaintiff's state law claims against them.  They assert that the duties contained in Plaintiff's allegations— namely, the monitoring of inmates and of controlled substances in the facility—are discretionary, and that the Officer Defendants did not violate a ministerial function such that official immunity would not apply.  The Officer Defendants also argue that the public duty doctrine bars the state wrongful death claims against them.

The Jefferson County Defendants argue that Plaintiff has failed to allege an underlying constitutional violation and therefore his municipal liability claims under § 1983 must fail.  They also assert that Plaintiff has failed to state a § 1983 claim against them because Plaintiff has failed to allege any unconstitutional policy or custom as the moving force behind any alleged deprivation of rights, and because Plaintiff has failed to allege any facts which would plausibly state a claim based on the Jefferson County Defendants' training practices.  Further, the Jefferson County Defendants argue that Defendant Marshak should be dismissed from the action because all claims against him are in his official capacity, and are therefore redundant to those against Jefferson County.

Plaintiff responds that he has sufficiently alleged that the Officer Defendants violated Ms. Miles' constitutional rights when they failed to prevent Ms. Miles from accessing illicit drugs

and when they delayed Ms. Miles' access to medical care.  He argues that the violated rights were clearly established and that the Officer Defendants are not entitled to qualified immunity. Plaintiff further responds that the Officer Defendants are not entitled to official immunity because official immunity does not apply to violations of ministerial duties, and the duties relevant to the complaint were ministerial in nature.  As to the Jefferson County Defendants, Plaintiff asserts that he has sufficiently alleged facts which support the existence of an unconstitutional policy and of inadequate hiring, training, and supervision practices such that his § 1983 municipal liability claims should survive.

### III.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted."  To survive a motion to dismiss, a complaint must show "'that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  All reasonable inferences from the complaint must be drawn in favor of the nonmoving party.  *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012).

### III. Analysis

#### A.     Defendant Marshak

As an initial matter, the Jefferson County Defendants argue that the official capacity claims against Defendant Marshak should be dismissed as redundant.  "It is proper for a court to dismiss a claim against a government officer in his official capacity as duplicative or redundant if the claims are also asserted against the officer's governmental employer."  *Caruso v. City of St. Louis*, 2016 WL 6563472, at *1 (E.D. Mo. Nov. 4, 2016) (citing *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) and *Bonenberger v. City of St. Louis*, 2016 WL 5341113, at *2 (E.D. Mo. Sept. 23, 2016)).  Because Jefferson County ("the County") was also named as a defendant in the claims against Defendant Marshak, the official capacity claims against Defendant Marshak under § 1983 (Counts I and III) and state law (Count II) will be dismissed.  Furthermore, because Plaintiff's claims against Defendant Marshak are explicitly "in his official capacity only," (Doc. 1 at ¶ 28), Defendant Marshak is therefore dismissed from this action.

The Court will now consider Plaintiff's § 1983 claims, on which Plaintiff premises federal court jurisdiction (Doc. 1 at ¶ 33).

#### B.     42 U.S.C. § 1983 Claims (Counts I, III, V, VII, and IX)

In the complaint, Plaintiff alleges that, in the hours leading up to her death, Ms. Miles had access to, and consumed, a lethal dose of controlled substances while in Jefferson County's custody.  According to Plaintiff, all defendants (or their agents) should have known that Ms. Miles faced an increased chance of harm should she relapse and ingest controlled substances,

and the defendants failed to prevent Ms. Miles from ingesting controlled substances by failing to undertake proper procedures of searching and monitoring detainees. Plaintiff asserts that in so doing, all defendants were deliberately indifferent to Ms. Miles' rights.

Both the Officer Defendants and the Jefferson County Defendants contend that Plaintiff fails to state § 1983 claims against them. All defendants argue that Plaintiff has not adequately alleged a constitutional violation because he alleges insufficient facts and improperly relies on generalized and conclusory assertions. The Officer Defendants further argue that they are entitled to qualified immunity. The Jefferson County Defendants, for their part, contend that Plaintiff has also not sufficiently pled a claim for § 1983 municipal liability.

### i.     Officer Defendants (Counts V, VII, and IX)

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation modified). The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* (citation modified). Because Ms. Miles had been arrested but not yet sentenced, violations of her rights are analyzed under the due process clause of the Fourteenth Amendment. *Poemoceah v. Morton Cnty., N. Dakota*, 117 F.4th 1049, 1055 (8th Cir. 2024); *see also Jones v. Faulkner Cnty., Arkansas*, 131 F.4th 869, 874 (8th Cir. 2025). This standard "borrows from the Eighth Amendment deliberate-indifference standard applicable to claims of prison inmates." *Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017) (quoting *Bailey v. Feltmann*, 810 F.3d 589, 593 (8th Cir. 2016) (alterations omitted); *see also Jones*, 131 F.4th at 874 (analyzing pretrial detainee's claims "relying on Fourteenth and Eighth Amendment cases alike").

"A plaintiff claiming deliberate indifference must establish objective and subjective

components." *Jones*, 131 F.4th at 874 (quoting *Thompson v. King*, 730 F.3d 742, 746 (8th Cir. 2013)).  For the objective component (also referred to as "step one"), the plaintiff must show that the detainee was "incarcerated under conditions posing a substantial risk of serious harm."  *Kern v. St. Charles Cnty., Missouri*, No. 4:20-CV-00884-SPM, 2022 WL 1262507, at *5 (E.D. Mo. Apr. 28, 2022) (quoting *Farmer*, 511 U.S. at 834).  For the subjective component (also referred to as "step two"), the plaintiff must show that the defendants "acted with deliberate indifference to the substantial risk of serious harm":

> To satisfy the [subjective] prong, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Deliberate indifference is something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risk.  Whether a defendant knew of a risk of harm is determined from the defendant's perspective at the time in question, not with hindsight's perfect vision.

*Id.* (citation modified).

The Eighth Circuit has observed that "the deliberate-indifference standard is difficult to meet.  It requires a highly culpable state of mind approaching actual intent to harm the inmate. Mere negligence or even gross negligence won't suffice." *Joseph v. Wheeler*, 144 F.4th 1111, 1113 (8th Cir. 2025) (citation modified).  The Officer Defendants' requisite mental state for a deliberate indifference claim is "akin to criminal recklessness."  *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016); *see also Joseph*, 144 F.4th at 1111.  Furthermore, once a plaintiff meets this standard and shows that a constitutional violation occurred, "that's only half the battle, as thereafter "[the plaintiff] must also overcome qualified immunity."  *Joseph*, 144 F.4th at 1113 (citation modified).

Qualified immunity protects a public official from damage actions if her conduct did not violate clearly established rights of which a reasonable person would have known.  *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  Because qualified

immunity is an immunity from suit rather than a mere defense to liability, it is effectively lost if a case is erroneously permitted to proceed. *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Accordingly, the Supreme Court has repeatedly stressed resolving immunity questions at the earliest possible stages in litigation. *Id.* "[T]he salient question ... is whether the state of the law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." *Tolan v. Cotton,* 572 U.S. 650, 656 (2014), quoting *Hope v. Pelzer,* 536 U.S. 730, 741 (2002).

"To decide whether an official is entitled to qualified immunity, we conduct a two-step inquiry," determining "(1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate a constitutional or statutory deprivation; and (2) whether the right was clearly established at the time." *Poemoceah,* 117 F.4th at 1054. "If either question is answered in the negative, the public official is entitled to qualified immunity." *Norris v. Engles,* 494 F.3d 634, 637 (8th Cir. 2007) (internal quotation marks and citations omitted). "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Adams v. City of Cedar Rapids,* 74 F.4th 935, 938 (8th Cir. 2023) (citation modified). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Joseph,* 144 F.4th at 1113-14.

Here, Plaintiff asserts that the Officer Defendants failed to: (i) prevent the importation of controlled substances; (ii) prevent Ms. Miles from gaining access to controlled substances while in custody; (iii) appropriately monitor or perform mandatory cell checks on Ms. Miles while she was in her holdover cell; and (iv) timely, consistently, and properly assess and document Ms. Miles' physical and mental condition. (Doc. 1 at ¶¶ 136, 156, 176). Plaintiff further alleges that the Officer Defendants "knew or should have known that an individual in [Ms. Miles'] situation would attempt to obtain controlled substances while in custody." (Doc. 1 at ¶¶ 133, 153, 173).

### Failure to Protect or Prevent Harm

The Court shares the Officer Defendants' observation that Plaintiff appears to assert primarily § 1983 "failure to protect" or "failure to prevent harm" claims against the Officer Defendants in Counts V, VII, and IX. As in *Kern v. St. Charles Cnty., Missouri*, with respect to the objective element of the deliberate indifference analysis, Plaintiff fails to cite "any cases addressing whether, or under what circumstances, an inmate's risk of exposure to illegal drugs that he could voluntarily ingest constitutes an 'substantial risk of serious harm' for purposes of a failure to prevent harm claim" and the Court's own research has revealed "no Eighth Circuit cases on point" (besides *Kern*). 2022 WL 1262507 at *6. Indeed, outside the Eighth Circuit, "in the majority of cases concerning illegal drugs smuggled into prison, courts have rejected failure-to-protect claims brought by inmates absent facts suggesting that the risk of exposure to drugs was greater inside the facility than outside of the facility." *Johnson v. Morton*, 2022 WL 1556404, at *4 (S.D.N.Y. May 17, 2022) (citing, *inter alia*, *Kern*, 2022 WL 1262507 at *6). Unlike the plaintiff in *Johnson*, Plaintiff here has made no such allegations that Ms. Miles faced a greater risk of exposure to controlled substances inside Jefferson County Jail than outside it. Consequently, the Court is skeptical that Plaintiff has sufficiently pled the objective element of a § 1983 failure to prevent harm claim.

Even assuming, *arguendo*, that Ms. Miles' conditions posed an objective, substantial risk of harm, the Court finds that Plaintiff has not adequately pled the subjective element of § 1983 deliberate indifference. Plaintiff's complaint alleges that the Officer Defendants "were aware and knew or should have known that drug overdoses resulting in death of inmates have [occurred] and could occur at the Jefferson County Jail," that they "failed to search [Ms. Miles] and/or other inmates for controlled substances prior to placing [Ms. Miles] in her holdover cell," and that they "individually and/or collectively, failed to prevent [Ms. Miles] from harboring

10

and/or gaining access to controlled substances while in her holdover cell." (Doc. 1 at ¶¶ 75-76, 79).[2]  These allegations are too speculative and generic to adequately plead the subjective element of § 1983 deliberate indifference.  Most glaringly, the complaint is silent as to how or where Ms. Miles ingested the controlled substances—and therefore silent, too, on whether Officer Defendants were aware of these facts or of any associated risks.  *See Kern*, 2022 WL 1262507 at *5.

For example, it is unclear from the complaint whether Plaintiff alleges that Ms. Miles procured the controlled substances within Jefferson County Jail or elsewhere, such as during her trip to Mercy Hospital Jefferson.  If the suggestion is that she did so within Jefferson County Jail, Plaintiff does not allege *how* she did so—such as whether the drugs were in her holding cell, in another area of the jail, or procured from another detainee.  Despite alleging that the Officer Defendants knew or should have known that drug overdoses have occurred in the jail, Plaintiff does not adequately plead that controlled substances were actually present in the Jefferson County Jail, nor that detainees in the Jefferson County Jail had access to such substances.  *See James v. Bartow Cnty., Georgia*, 2017 WL 748738, at *7 (N.D. Ga. Feb. 27, 2017), *aff'd*, 798 F. App'x 581 (11th Cir. 2020) ("[I]t is not enough to generically allege an influx of drugs into the jail, Plaintiff's Complaint must also demonstrate that each individual … Defendant subjectively knew of the risk of [decedent's] ingesting the illegal drug from the influx.").  Accordingly, Plaintiff has not adequately pled that the Officer Defendants were specifically aware that Ms. Miles was at risk of accessing and ingesting controlled substances while in custody.  Plaintiff

---

[2] Plaintiff also alleges that, at booking, "it was noted that [Ms. Ellis] had a history or drug use, and most recently used controlled substances" the previous day. (Doc. 1 at ¶ 43).  Insofar as Plaintiff suggests that Ms. Miles' previous drug use increases the risk that she would ingest controlled substances *within the Jefferson County Jail*—and the Court is skeptical that it does have such bearing, at least for purposes of a § 1983 failure to protect claim—Plaintiff does not make any such specific allegation.  Furthermore, the complaint does not allege that any of the

11

therefore has not alleged that the Officer Defendants possessed "a highly culpable state of mind approaching actual intent to harm the inmate" or acted "with criminal recklessness at a minimum." *Joseph*, 144 F.4th at 1113 (citation modified).

The Court therefore finds that Plaintiff fails to state a § 1983 failure to protect claim against any of the Officer Defendants.[3]  The Court will now consider whether Plaintiff has alternatively alleged, in Counts V, VII, and IX, that the Officer Defendants were deliberately indifferent to Ms. Miles' medical needs under § 1983.[4]

## Deliberate Indifference to Medical Needs

"Prison officials violate the Due Process Clause of the Fourteenth Amendment when they show deliberate indifference to a pretrial detainee's objectively serious medical needs." *Ivey v. Audrain Cty.*, 968 F.3d 845, 848 (8th Cir. 2020).  "To succeed on this kind of claim, a plaintiff must demonstrate that a pretrial detainee had an objectively serious medical need that the defendants knew of and yet deliberately disregarded." *Id.*  For medical-needs deliberate indifference, "[t]he objective component requires a plaintiff to demonstrate an objectively serious medical need." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009).  "A medical need is

---

Officer Defendants were subjectively aware of Ms. Miles' history of drug use.

[3] The Court notes that, for the reasons described *supra* regarding Eighth Circuit case law on § 1983 failure to prevent harm claims and detainees' access to drugs, the Officer Defendants would also likely be entitled to qualified immunity on any failure to prevent harm claims because Plaintiff has not demonstrated violations of clearly established law.  *See Joseph*, 144 F.4th at 1115 (holding that "[e]ven if [an officer] violated the constitution, [Plaintiff] hasn't shown that [the officer]'s conduct violated clearly established law" and therefore the officer is entitled to qualified immunity).

[4] The Court agrees with the Officer Defendants that Plaintiff appears to "to reframe his § 1983 claim, originally based on an alleged failure to protect or prevent access to controlled substances, as also encompassing a claim for intentional delay in medical treatment" in his response to the Officer Defendants' motion to dismiss.  (Doc. 27 at 1).  However, in the interests of justice, and because the complaint contains allegations such as, *inter alia*, that the Officer Defendants "[f]ailed to timely, consistently, and properly assess and document [Ms. Miles'] physical and mental condition," (Doc. 1 at ¶¶ 136, 156, 176), the Court will evaluate the sufficiency of any potential claim based on deliberate indifference to medical needs.

objectively serious if it has been diagnosed by a physician or if it is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018) (citation modified). *See also Grayson v. Ross*, 454 F.3d 802, 810 (8th Cir. 2006) ("In determining whether [a detainee] had an objectively serious medical need, absent a physician's diagnosis, we look to whether it would be obvious to a layperson that [the detainee] required immediate medical attention.").

As for the second step of the deliberate indifference analysis, "the subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such [medical] need." *Vaughn*, 557 F.3d at 908. For delay in assistance or treatment to constitute deliberate indifference, "the information available to the prison official must be such that a reasonable person would know that the inmate requires medical attention, or the prison official's actions (or inaction) must be so dangerous to the health or safety of the inmate that the official can be presumed to have knowledge of a risk to the inmate." *Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

Here, Plaintiff has not alleged that Ms. Miles had a medical diagnosis by a physician. Accordingly, for the purposes of deliberate indifference and qualified immunity, the primary inquiry before the Court is whether Ms. Miles "exhibit[ed] symptoms that were obvious to the layperson," *Grayson*, 454 F.3d at 809, and whether the Officer Defendants knew of these symptoms. For the Court's analysis, "each defendant's conduct must be independently assessed ... because liability for damages for a federal constitutional tort is personal." *Cross v. Mokwa*, 547 F.3d 890, 898 (8th Cir. 2008) (internal quotation marks omitted). The Court will therefore consider the allegations pertaining to each Officer Defendant in turn.

### a.    Ellis (Count V)

Plaintiff alleges that Defendant Ellis "patted down" Ms. Miles upon her return from

Mercy Hospital Jefferson and brought Ms. Miles to her isolated holdover cell. (Doc. 1 at ¶¶ 46-47). Plaintiff further alleges that, at 11:52 a.m., Defendant Ellis adjusted Ms. Miles' wrist splint and removed Ms. Miles' lunch from the holdover cell. (*Id.* at ¶ 56). Finally, according to the complaint, Defendant Ellis looked through the window of Ms. Miles' holdover cell at approximately 2:17 p.m., and upon noticing that Ms. Miles was not moving or breathing, alerted EMS personnel. (*Id.* at ¶ 63).

The Court finds that Plaintiff has not adequately alleged a deliberate indifference claim. First, Plaintiff has not adequately alleged that Ms. Miles exhibited an objectively serious medical need. In the time between Ms. Miles' return to Jefferson County Jail and the removal of her lunch at 11:52 a.m., Plaintiff does not allege that Ms. Miles was exhibiting any symptoms that would have alerted a layperson of an objectively serious medical need; Plaintiff merely alleges that Ms. Miles entered her cell on her own, attempted to sleep on her bed, ate her lunch, and drank some water from her sink. (Doc. 1 at ¶¶ 46-56). This behavior does not present to correctional officers any obvious symptoms requiring medical attention. *See Grayson*, 454 F.3d at 809 (holding that because the decedent "sat calmly in the back of the patrol car, followed directions, answered questions posed, and remained quiet and seated on a bench inside the jail," decedent did not display an objectively serious medical need).

Second, Plaintiff has not adequately alleged that Defendant Ellis was aware that Ms. Miles had ingested any controlled substances—indeed, as noted above, it is unclear from the pleadings whether Plaintiff is alleging that Ms. Miles *had* consumed controlled substances by this time. In his response, Plaintiff argues that the complaint sufficiently addresses the subjective step of deliberate indifference by alleging that the Defendant Officers had knowledge that Ms. Miles was at "substantial risk for drug ingestion." (Doc. 22 at 11). Mere knowledge of a potential risk that Ms. Miles could attempt to consume controlled substances is insufficient for

14

step two of medical-needs deliberate indifference. *See, e.g., Grayson*, 454 F.3d at 809 (finding that plaintiff had not shown deliberate indifference where defendant "knew that [decedent] was likely under the influence of methamphetamine," but the defendant was "unsure whether [decedent] was hallucinating" and therefore he did not subjectively know that decedent required medical attention).[5] When Defendant Ellis did observe that Ms. Miles was not moving or breathing at 2:17 p.m., she alerted medical staff with no alleged delay. There is no deliberate indifference to medical needs where a defendant "took affirmative steps to respond to the situation as it developed." *Jones v. Faulkner Cnty., Arkansas*, 131 F.4th 869, 875 (8th Cir. 2025).

Accordingly, Plaintiff has failed to plead both the objective and subjective elements of a deliberate indifference claim against Defendant Ellis and Count V therefore fails. Furthermore, Defendant Ellis is entitled to qualified immunity as to Plaintiff's deliberate indifference claim because Plaintiff has not adequately alleged a constitutional violation. *See Grayson*, 454 F.3d at 809 (officer was entitled to qualified immunity because "it would not be clear to a reasonable officer that his conduct was unlawful in the situation he confronted" because decedent's "calm" behavior did not "exhibit symptoms that were obvious to the layperson" of an objectively serious medical need).

Count V will therefore be dismissed.

### b.      Burch (Count VII)

As for Defendant Burch, Plaintiff alleges that he was "on duty" at all relevant times and, at 12:32 p.m., he "conducted a cell check/guardian scan without entering [Ms. Miles'] cell or checking on [Ms. Miles]." (Doc. 1 at ¶¶ 23, 62). According to the complaint, at the time

---

[5] Furthermore, as explained *supra,* the complaint does *not* adequately allege that the Officer Defendants had specific knowledge of any risk that Ms. Ellis would consume controlled

Defendant Burch looked into Ms. Miles' cell,  she was lying motionless on the floor after rolling off her mattress.  (*Id.* at ¶¶ 58-60).

The Court is skeptical that a lay person in Defendant Burch's position would have recognized that Ms. Miles was in obvious need of medical attention.  Ms. Miles' apparent symptoms were that she was lying motionless on the floor; within the previous hour, she had evidently attempted to fall asleep on her mattress, consumed her lunch, drunk water at her sink, and returned to her mattress.  Ms. Miles was neither visibly exhibiting severe symptoms, *cf. Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997) (discussing symptoms of early labor, finding that "[a] layperson would have recognized the necessity for a doctor's attention" when the inmate reported bleeding, pain, and contractions six minutes apart), nor had Ms. Miles been motionless for hours so as to signal a clear problem to Defendant Burch, *cf. Letterman v. Does*, 789 F.3d 856, 864-65 (8th Cir. 2015) (discussing officer's failure to seek medical attention after decedent banged his head against a concrete wall and had not moved in roughly 12 hours, and whom another officer had been unable to wake up).

Furthermore, for the reasons discussed *supra* with respect to Defendant Ellis, Plaintiff has failed to plead the subjective element of deliberate indifference.  Plaintiff has not alleged that Defendant Burch knew or had reason to know that Ms. Miles had consumed any controlled substances, nor that Defendant Burch knew or had reason to know that Ms. Miles was otherwise in need of medical attention.  "Even if, in hindsight, [the officer] could have done more, or done it faster, that alone does not amount to deliberate indifference." *Jones*, 131 F.4th at 875.  Certainly, Plaintiff has not adequately alleged that at the time of the cell check, Defendant Burch knew sufficient facts to show a mental state "equivalent to criminal-law recklessness." *Schaub v. VonWald*, 638 F.3d 905, 914-15 (8th Cir. 2011); *see also Jackson v. Everett*, 140 F.3d 1149,

---

substances while in custody.

1152 (8th Cir. 1998) ("[M]ere negligence does not support a conclusion that [defendant] exercised a callous disregard or reckless indifference in responding to the risk.") (citation modified).

Even assuming that Defendant Burch was deliberately indifferent to Ms. Miles' constitutional rights, the Court finds that Defendant Burch is entitled to qualified immunity because, for the above reasons and those discussed with respect to Defendant Ellis, "it would not be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Grayson*, 454 F.3d at 809. Case law does not clearly establish that Ms. Miles lying on the floor for thirty minutes, even if motionless, constitutes an obvious symptom of an objectively serious medical need. Nor has Plaintiff "point[ed] to controlling authority, or a robust consensus of persuasive authority, putting [Defendant Burch] on notice that his actions violated [Ms. Miles'] rights." *Joseph*, 144 F.4th at 1114. Accordingly, the Court will dismiss Count VII.

### c. Downard (Count IX)

According to the complaint, Defendant Downard was also "on duty" at all relevant times and, at 12:18 p.m., he "peered through [Ms. Miles'] cell window without entering the cell or checking on [Ms. Miles]." (Doc. 1 at ¶¶ 23, 61). According to the complaint, at the time Defendant Downard looked into Ms. Miles' cell, she was lying motionless on the floor after rolling off her mattress. (*Id.* at ¶¶ 58-60).

Plaintiff's allegations against Defendant Downard are substantially the same as those against Defendant Burch, with the only difference being that Defendant Downard looked into Ms. Miles' cell fourteen minutes before Defendant Burch did. Therefore, for all the reasons discussed *supra* with respect to Defendant Burch, Plaintiff has failed to state a medical-needs deliberate indifference claim against Defendant Downard and alternatively, Defendant Downard is entitled to qualified immunity on Count IX. Accordingly, Count IX will be dismissed.

ii.     **Jefferson County (Counts I and III)**

In Count I (violation of the Eighth and Fourteenth Amendments) and Count III (failure to hire, train, and/or supervise), Plaintiff brings claims under § 1983 against the County.  Plaintiff bases liability on the County's role, as employer, supervisor, and policymaker, in deficient prison policies, procedures, customs, practices, and training.  Plaintiff alleges such deficiencies violated the Eighth and Fourteenth Amendments and resulted in Ms. Miles' pain, suffering, injuries, and death.  The parties dispute whether Plaintiff has adequately stated § 1983 claims against the County.

### Count I (Violation of the Eighth and Fourteenth Amendments)

"[T]he doctrine of respondeat superior does not apply to § 1983 cases." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014).  The County may be liable under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the County.  *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 (1978).  Therefore, at issue with Count I is whether Plaintiff sufficiently alleges that "execution of [the County's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," resulted in the constitutional injury.  *Monell*, 436 U.S. at 694.  Plaintiff does not allege an express written policy infringed upon Ms. Miles' constitutional rights.  An unwritten or *de facto* policy is "evaluated under the standards used to analyze the sufficiency of a *Monell* custom claim." *Lollie v. Johnson*, No. 14-CV-4784 (SRN/HB), 2015 WL 3407931, at *4 (D. Minn. May 27, 2015) (internal citation omitted).

To establish a claim based a custom, the plaintiff must demonstrate:

(1)     the   existence   of   a   continuing,   widespread,   persistent   pattern   of

> unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016) (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014)). "To survive a motion to dismiss, [Plaintiff] need not prove each of these three prongs, but [ ] must allege enough facts about each element of the claim to raise a right of relief above a speculative level." *Lollie*, 2015 WL 3407931, at *5. "[T]he pattern of unconstitutional conduct must be so pervasive and widespread so 'as to have the effect and force of law.'" *Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996)).

As an initial matter, the Court notes that it has found that Plaintiff has not adequately pled that the Officer Defendants violated Ms. Miles' constitutional rights. Therefore, Plaintiff has not adequately pled that there is underlying unconstitutional conduct to which municipal liability can attach. Nonetheless, in the interests of justice and because the Court has made alternative findings that the Officer Defendants were entitled to qualified immunity, the Court will assess the sufficiency of Plaintiff's allegations for his § 1983 claims against the County.

"*Iqbal* instructs courts to begin the motion-to-dismiss analysis by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 894 (E.D. Mo. 2019) (quoting 556 U.S at 679) (quotation marks omitted). After reviewing Plaintiff's allegations in the complaint, the Court identifies much of the material as legal conclusions or recitations of claim elements. By way of example, such conclusions include:

> [The County's] failure as alleged herein was part of the official policy adopted by [the County] or was part of a custom and/or usage that was known to [the County] and had been allowed to develop and continue.
>
>     …
>
> [The County's] actions as aforesaid were deliberately indifferent to the rights of Melissa.
>
>     …
>
> That at all relevant times hereto, there existed within Jefferson County and the Jefferson County Sheriff's Office policies, customs, practices and/or usages that were so pervasive that they constituted the policies of Jefferson County and the Jefferson County Sheriff's Office that caused the constitutional deprivations of Melissa as more fully set forth above.

(Doc. 1 at ¶¶ 93, 96-97). The Court will not accept such general allegations and conclusions as true. *See Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) ("The court is not bound to accept as true a legal conclusion couched as a factual allegation.") (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

However, the Court has identified the following allegations as including factual material relevant to § 1983 municipal liability (as opposed to *respondeat superior* liability, which Plaintiff asserts against the County in Count IV under state law):

> [The County] failed to employ a reasonably safe program, surveillance, and/or monitoring policy of its inmates, including Melissa.
> …
>
> Upon information and belief, prior to Melissa's death, [the County was] aware and knew or should have known that drug overdoses resulting in death of its inmates have and could occur at its jail.
> …
>
> Defendant Jefferson County knew or should have known that an individual in Melissa's situation would attempt to obtain controlled substances while in custody.
> …
>
> [The County] deliberately and knowingly failed to ensure the proper procedure(s) were in place to prevent inmates, including Melissa, from obtaining controlled substances while in custody.

(Doc. 1 at ¶¶ 73-74, 91-92).

Even assuming, *arguendo*, that officers violated Ms. Miles' constitutional rights on September 17, 2023, here Plaintiff has not alleged sufficient facts to state a claim for § 1983 municipal liability.  Plaintiff specifies no incidents, outside those in the present case, to suggest that any officer's actions were pursuant to an unofficial custom or policy.  *See Ball-Bey*, 415 F. Supp. 3d at 895 ("The Eighth Circuit has not directly addressed the quantum of 'continuing, widespread, persistent' conduct a plaintiff must allege to satisfy the *Iqbal* standard in this context, though it has held that isolated incidents do not suffice and that allegations of 'many' incidents do establish liability.") (citing *Wilson v. City of N. Little Rock*, 801 F.2d 316, 322-23 (8th Cir. 1996), & *Harris v. City of Pagedale*, 821 F.2d 499, 504 (8th Cir. 1987)); *see also Plamp v. Mitchell Sch. Dist. No. 17-2,* 565 F.3d 450, 460 (8th Cir. 2009*)*.  The complaint alleges no facts suggesting constitutional violations occurred outside the day of Ms. Miles' death—much less a pattern of similar constitutional violations—to put the County or notice or demonstrate a custom of the County.  *S.M. v. Lincoln County*, 874 F.3d 581, 585 (8th Cir. 2017); *see also Ball-Bey*, 415 F.Supp. at 895-97.[6]  Accordingly, the Court finds that Plaintiff's factual allegations fail to raise a plausible inference that there existed a custom "so pervasive among non-policymaking employees of the municipality that it effectively has the force of law."  *Bolderson v. City of*

---

[6] Furthermore, Plaintiff's contention that the County maintained an "official policy" or custom of "deliberately and knowingly fail[ing] to ensure the proper procedure(s) were in place to prevent inmates, including Melissa, from obtaining controlled substances while in custody" (Doc. 1 at ¶¶ 92-93) appears to contradict other allegations in the complaint pertaining to the County's policies and procedures.  Namely, the complaint alleges that: (i) the County has "enacted policies and procedures which dictate that their employees perform cell checks on inmates" and "which dictate that their inmates are prohibited from having access to and/or ingesting controlled substances;" (ii) "compliance with the aforementioned policies and procedures is mandatory" for County employees; and (iii) "the aforementioned policies and procedures detail explicit instructions for the care and custody of inmates, including Melissa, of which there is no variance or discretion in administering the same."  (Doc. 1 at ¶¶ 82-85).

*Wentzville, Mo.*, 840 F.3d 982, 986 (8th Cir. 2016).

For the above reasons, Count I will be dismissed.

### Count III (Failure to Hire, Train, and/or Supervise)

For Count III, Plaintiff alleges that the County failed to adequately hire, train, or supervise the Officer Defendants, resulting in violations of Ms. Miles' rights.[7]

"Failure to supervise employees may establish a *Monell* claim if there is proof that the failure amounts to deliberate indifference to the rights of persons with whom the employee comes into contact." *Varela v. Hill*, 2024 WL 1328265, at *6 (E.D. Mo. Mar. 28, 2024) (internal quotation marks and alterations omitted) (quoting *S.M. v. Lincoln County*, 874 F.3d 581, 585 (8th Cir. 2017)). "Deliberate indifference ... is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *S.M.*, 874 F.3d at 585. "The issue is whether, in light of the duties assigned to specific officers or employees the need for more or different training or supervision is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* (internal quotation marks and alterations omitted) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

Here, the only factual assertions of corrections officers' improper hiring, training, and supervision stem from the day of Ms. Miles' death. As discussed above, even assuming that the Officer Defendants violated Ms. Miles' rights, Plaintiff has not alleged a single prior incident of

---

[7] The Court here reiterates that, because the Court finds that Plaintiff has not adequately alleged a violation of Ms. Miles' constitutional rights, Plaintiff also has not adequately pled an

unconstitutional misconduct, much less a pattern of which the County was aware.  Furthermore:

> Without facts about the training [the Officer Defendants] did or did not receive, [Plaintiff] fails to sufficiently plead that a failure to train or supervise caused the constitutional violation. As currently pleaded, [Plaintiff's] Complaint assumes because [the Officer Defendants] allegedly committed a constitutional violation, they must not have been trained properly.

*Ball-Bey*, 415 F.Supp. at 900–01 (citing *Connick v. Thompson*, 563 U.S. 51, 60 (2011)).

Plaintiff's allegations for Count III focus on the allegedly improper monitoring and care of Ms. Miles, with Plaintiff attempting to expand the allegations' scope by calling such actions "official policy" and the product of "inadequate policies, procedures, training, manuals, and guidelines." (*See, e.g.,* Doc. 1 at ¶¶ 117-18).  However, even assuming that the Officer Defendants committed a constitutional violation, "not every instance of [a constitutional violation] establishes deliberate indifference by the [County]."  *Ball-Bey*, 415 F.Supp. at 901.  Plaintiff has pled insufficient facts to suggest that any wrongdoing with respect to Ms. Miles was part of a larger issue in the County's practices.

Plaintiff fails to support his assertions regarding the adequacy of the County's hiring, supervision, or training policies with any factual assertions about the hiring, supervision or training the Officer Defendants received.  Plaintiff's allegations are too conclusory and speculative to allege a plausible § 1983 claim for failure to hire, train, or supervise.  Accordingly, Count III will be dismissed and the Jefferson County Defendants' motion will be granted.

### C.     Remaining State-Law Claims

Plaintiff's remaining claims arise under state law: wrongful death claims under state common law negligence theories (Counts II, VI, VIII, and X) and a state common law *respondeat superior* claim (Count IV).[8]  Pursuant to 28 U.S.C. § 1367(c)(3), "district courts may

---

underlying constitutional violation.

[8] Plaintiff does not specify the legal authority for Count VI (*respondeat superior* against

decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... (3) the district court has dismissed all claims over which it has original jurisdiction." Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law wrongful death and *respondeat superior* claims. *See also Gregoire v. Class,* 236 F.3d 413, 420 (8th Cir. 2000) ("[T]he judicial resources of the federal courts are sparse compared to the states. We stress the need to exercise judicial restraint and avoid state law issues wherever possible.") (quoting *Condor Corp. v. City of St. Paul,* 912 F.2d 215, 220 (8th Cir. 1990)). Plaintiff's state law claims (Counts II, IV, VI, VIII, and X) will therefore be dismissed.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the Officer Defendants' Motion to Dismiss (Doc. 8) is **GRANTED in part** as to Plaintiff's claims under 42 U.S.C. § 1983 (Counts V, VII, and IX) and **DENIED in part as moot** as to Plaintiff's claims under state law (Counts VI, VIII, and X).

**IT IS FURTHER ORDERED** that the Jefferson County Defendants' Motion to Dismiss (Doc. 6) is **GRANTED**.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED as moot.**

**IT IS FURTHER ORDERED** that the Court declines to issue supplemental jurisdiction over Counts II, IV, VI, VIII, and X and they are **DISMISSED without prejudice**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 14th day of January, 2026.

　　　/s/ Noelle C. Collins　　　　　　
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE

---

the County). Because "the doctrine of *respondeat superior* does not apply to § 1983 cases," *Jackson*, 747 F.3d at 543, the Court construes Count IV as arising under Missouri state law.